**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juan Manuel Vasquez,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>PMB Enterprises West, Inc., doing business as Pancho's Mexican Buffet Inc.; Pamex of Texas Inc., et al.,<br><br>　　　　Defendants. | No. CV-08-01555-PHX-NVW<br><br>**ORDER** |

     Plaintiff Juan Vasquez seeks damages from his former employer, Defendant PMB Enterprises West, Inc. ("PMB"), for alleged violations of 42 U.S.C. § 1983, Title VII, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Equal Pay Act ("EPA"). Vasquez also seeks damages for alleged intentional infliction of emotional distress and negligent infliction of emotional distress under state law. Now before the Court is PMB's Motion for Summary Judgment (Doc. 47), its Separate Statement of Facts (Doc. 47-2), Vasquez's Response (Doc. 64), his Amended Separate Statement of Facts (Doc. 61), PMB's Reply (Doc. 62), and PMB's Supplemental Reply (Doc. 69). For the following reasons, the Motion is granted in part and denied in part.

## I. Legal Standard

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce sufficient evidence to persuade the Court that there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Conversely, to defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact is one that might affect the outcome of the suit under the governing law, and a factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(c) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1105-06; *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.* The nonmoving party's evidence is presumed to be true and all inferences from the evidence are drawn in the light most favorable to the nonmoving party. *Eisenberg*

*v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987). If the nonmoving party produces direct evidence of a genuine issue of material fact, the motion for summary judgment is denied. *Id.*

## II. Evidentiary Rulings

### A. Vasquez's References to his Deposition Transcript

In disputing any of the moving party's statements of fact or setting forth additional statements of fact, the nonmoving party is required to cite the specific admissible portion of the record supporting the nonmoving party's position. LRCiv 56.1(b). Courts are not required to "comb the record to find some reason to deny a motion for summary judgment." *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988); *see also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Failure to cite the page and line numbers when referring to a deposition transcript "alone warrants exclusion of the evidence." *Orr v. Bank of Am.*, 285 F.3d 764, 774-75 (9th Cir. 2002). A district court has similar discretion to exclude evidence in an affidavit if a party fails to cite specific paragraph numbers. *Id.* at 775 n.14.

Vasquez has neither cited specific page and line numbers in reference to his deposition transcript, which is over 300 pages in length, nor cited specific paragraph numbers in reference to his ten-page affidavit. Because the affidavit is relatively short and imposes only a minor burden on the Court's time, it will be considered. However, the Court declines to scour over 300 pages of a deposition transcript on Vasquez's behalf. Therefore, his references to his deposition transcript are disregarded.

### B. Inadmissible Evidence

Only admissible evidence may be considered on summary judgment. *Orr*, 285 F.3d at 773. PMB challenges the authenticity of several of Vasquez's exhibits. Because those exhibits are not dispositive and are not relied upon for purposes of this motion, their authenticity need not be decided. PMB also challenges the affidavit of Vasquez's wife. To the extent it contains hearsay for which there is no exception and testimony that is not shown to be based on personal knowledge, it is excluded from consideration. Fed. R. Civ. P.

56(e)(1) (requiring opposing affidavits to be based on personal knowledge); Fed. R. Evid. 802 (deeming hearsay inadmissible absent an exception).

Finally, PMB argues that Vasquez's own affidavit, attached to the Response as Exhibit 2, is a sham that contradicts his deposition testimony in an attempt to create a triable issue of fact. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991) (if a district court determines that an affidavit "flatly contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment," it may disregard the affidavit). To the extent PMB directs the Court, in its briefing, to the portions of the deposition transcript that are flatly contradicted by the affidavit, the affidavit will be disregarded. Beyond that, just as it declines to do so on Vasquez's behalf, the Court will similarly decline to scour over 300 pages of a deposition transcript on PMB's behalf.

## III. Facts

The following facts, derived from the parties' statements of fact and accompanying admissible evidence, are either undisputed or framed in a light most favorable to Vasquez, the nonmoving party. Vasquez is a 63-year-old bi-lingual Mexican-American male with over 30 years of experience in the restaurant industry. In that time, he has held various positions, including that of manager. PMB, which does business under the name Pancho's Mexican Buffet, Inc. ("Pancho's"), operates Mexican food restaurants in Arizona and Oklahoma and franchises stores to other independent business operators.

Vasquez has a long history of employment with PMB. After working at several PMB locations from 1998 to 2001, he left to work for Taco Tote, another Mexican food chain restaurant. When PMB asked him to return in 2001, he agreed. He worked for PMB from 2001 to 2005, at which point he again left to work for Taco Tote. On February 11, 2006, after PMB asked Vasquez to return yet again, PMB rehired Vasquez to work as an assistant manager at the Pancho's in Mesa, Arizona. In Pancho's managerial hierarchy, general manager is the highest position, followed by associate manager and then assistant manager. Vasquez completed his assistant managerial training within the first three years of employment with PMB.

Shortly after the rehiring, PMB determined it had hired too many managers for the Mesa location. Therefore, it transferred Vasquez to the new Pancho's location on West Indian School Road in Phoenix, scheduled to open in January 2007. By January 2007, three managers had been assigned to the store: Shawn Cortez, general manager; Debbie Beal, associate manager; and Vasquez, assistant manager. Almost immediately, Vasquez began to experience problems with Cortez, his supervisor. Though Vasquez was expected to open and close the restaurant in his capacity as assistant manager, Cortez refused to give him keys to the store or the combination to the store's safe, explaining, "I do not trust Mexicans." Then, in spite of his refusal to provide Vasquez with keys or the combination to the safe, Cortez reprimanded Vasquez for failing to make a bank deposit and for failing to obtain change, stating, "I've had it with you. I knew that you were stupid, but I did not know that you were that stupid." When Vasquez reminded him that he had denied Vasquez access to the safe, Cortez threw his hands up in the air and walked away. Cortez often reminded the restaurant staff that he is not of Mexican descent.

On another occasion, Cortez commented on Vasquez's poor eyesight, exclaiming, "You are so blind that you should not be working here. You should be in a convalescing hospital." At the time, Vasquez had difficulty reading computer screens because he suffered from cataracts.[1]

On yet other occasions, Cortez strongly reprimanded Vasquez for straightforward managerial decisions. For example, after an employee complied with Vasquez's order to put beer in the large walk-in cooler in the restaurant, Cortez asked the employee why he had done so. When the employee explained that he had simply followed Vasquez's order, Cortez stated, in Vasquez's presence, "Juan is not shit in this place, you don't do anything that he says, and if you do that again, Juan and you will both be fired." Another instance was when

---

[1] Vasquez states in his affidavit that Cortez commented on his failing eyesight on at least three occasions, but according to Vasquez's deposition, Cortez made only one comment. Because Vasquez's affidavit directly contradicts his deposition testimony on this point, the affidavit is disregarded in this limited respect.

- 5 -

Cortez instructed Vasquez, over the phone, to move the furniture outside the restaurant to the inside, without any particular instruction on where to put it. When Cortez arrived, he criticized Vasquez's placement of the furniture inside the restaurant.

Distressed by his ever-deteriorating relationship with Cortez, Vasquez told a "Misty" about the problems he was experiencing with Cortez. Misty suggested that Vasquez give it some time because Cortez was likely under a lot of pressure. Vasquez also complained to Chad Kenyon, PMB's Regional District Manager, that Cortez was "rude" to him, that Cortez "just does not like" him, and that he could no longer work with Cortez. He told Kenyon that Cortez had denied him access to the store and the safe, but cannot recall whether he told Kenyon about Cortez's remark, "I do not trust Mexicans." He also told Kenyon about the incident involving the cooler and the fact that Cortez often laughed at his poor eyesight. He ultimately asked Kenyon to transfer him to another location. Kenyon assured Vasquez that he would talk to Cortez. When Kenyon came to Phoenix, he and Robert Cohen, PMB's Vice President of Operations at the time, assured Vasquez they would help him get his eyes corrected because he was such a good employee and had done so much for PMB.

However, even after speaking with Kenyon, Vasquez's poor relationship with Cortez continued to decline. At one point, Cortez angrily scolded him for a managerial decision he did not make. Specifically, when several employees came in to the restaurant on a Friday asking for their paychecks, Cortez accused Vasquez of telling the employees they could pick up their checks on a Friday and threatened to fire him if he ever did so again. Vasquez denied the accusation and informed Cortez that it was in fact Debra Beal, the Caucasian associate manager, who had told the employees they could pick up their checks that Friday. When Cortez verified the same with Beal later that day, instead of reprimanding her, he expressly approved of her decision, in Vasquez's presence.

The final incident with Cortez occurred on February 19, 2007. That day, Vasquez's wife was in labor and having extreme difficulty delivering their child. After the child was born, the doctor recommended that they stay an additional day for further testing. Vasquez, who was by his wife's side, therefore called Cortez, apprised him of the situation, and asked

for one day off to be with his wife and new baby. Cortez responded, "I know you're having problems, but that's not my problem." He then informed Vasquez that if he did not report for work the next day, he would "do something" about it. Vasquez was so worried about his job that he vomited at the hospital. In order to report to work the next day, Vasquez took his wife and baby home early, against the hospital's advice. He could not sleep that night.

Though the Indian School location had a strong opening, grossing approximately $60,000 in its first week of business in January 2007, business dropped off drastically thereafter. By February 2007, sales had declined by 20-30%. Cortez, along with Robert Cohen and Paul Bustamonte, Regional Vice President, decided to let Vasquez go. Throughout the time he worked at the Indian School location, Vasquez had excellent customer service, as reflected by the numerous compliments he received from customers and PMB managers, including Rene De La Cruz, Regional Manager, Stephen Oyster, PMB's President and CEO, Robert Cohen and Paul Bustamonte. He was always punctual and almost never missed a day of work. However, he was deficient in other areas. As Vasquez admitted in his deposition, he was not proficient on PMB's computer system. Furthermore, on at least one occasion, Cortez had to speak with Vasquez about the cleanliness of the store.

At around 3pm on February 23, 2007, Brian Perry, the purported fourth manager who had been working in the kitchen and had recently finished his assistant managerial training, told Vasquez that he was going home to change his clothes and that when he returned, he would be the new manager. When Perry left shortly thereafter, several employees approached Vasquez and told him Perry was going to replace him. At 5pm that same day, Cortez informed Vasquez that he was terminated because he "no longer met the standards for PMB." The termination left Cortez, Beal, and Perry to manage the restaurant. Perry is an approximately 23-year-old white male[2] who was transferred from a store in Texas.

---

[2]Contrary to PMB's contention, Vasquez's affidavit, attached to his Response, does indicate Perry's age and race. (Pl. Aff. ¶ 34.) That Vasquez admitted in his deposition that his testimony as to Perry's age was a mere estimation is neither a flat contradiction nor of any material significance in light of the significant difference between Vasquez's age and Perry's

- 7 -

1    The next business day after he was terminated, Vasquez called David Dixon, PMB's
Vice President of Human Resources at the time. When Vasquez asked Dixon why he had
been fired, Dixon said he knew nothing about it. Vasquez subsequently asked if he could be
transferred to another PMB location, but because PMB had laid off several other assistant
managers at other Pancho's locations in the Phoenix area around the same time it terminated
Vasquez, there were no positions available. Even after the lay-offs, the Phoenix-area PMB
restaurants continued to struggle. In May 2007, PMB was forced to close its Bell Road
location and in September 2007, Perry, the remaining assistant manager at the Indian School
location, was laid off due to slow business. Perry was not replaced. Shortly after Perry's
termination, the Indian School location closed.

On August 21, 2007, unable to reestablish employment with PMB, Vasquez filed a charge of discrimination with the Civil Rights Division of the Arizona Attorney General's Office and with the Equal Employment Opportunity Commission, which issued a "right to sue" letter on May 21, 2008. He initiated this lawsuit on August 22, 2008. At some point after his termination, he obtained eye surgery through ACCESS. His vision is now 20/20.

**IV.    Analysis**

    **A.    42 U.S.C. § 1983**

Section 1983 provides that any person who acts under color of state law to cause the deprivation of another person's "rights, privileges, or immunities" secured by the Constitution or federal laws will be liable to that injured person. 42 U.S.C. § 1983. The term "person" includes entities. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, because private entities typically do not act under color of state law, a plaintiff seeking to impose liability on a private entity under § 1983 must prove both (1) that the entity acted under color of state law and (2) that it deprived the plaintiff of a federal right. *See Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989).

---

estimated age.

- 8 -

Here, there is no evidence that PMB, a private entity, was acting under color of state law when it terminated Vasquez's employment. Vasquez apparently concedes as much because his response is wholly devoid of any argument to the contrary. Therefore, PMB is entitled to summary judgment on Vasquez's section 1983 claim.

**B.     Title VII**

Title VII of the Civil Rights Act of 1964 makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment, a plaintiff must establish a prima facie case, which creates a presumption that the defendant unlawfully discriminated against the plaintiff. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). If established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant is successful, the presumption of discrimination disappears and the burden shifts back to the plaintiff to produce "specific, substantial evidence" that the proffered reason is a pretext for discrimination. *Id.* at 889-890. Where the prima facie case "consists of no more than the minimum necessary to create a presumption of discrimination," the plaintiff has usually failed to raise a triable issue of fact as to pretext. *Id.* at 890. By the same token, when the proffered evidence of discrimination consists of more than the prima facie case, a triable issue of fact "almost always" exists. *Id.* (quoting *Sischo-Nownejad v. Merced Comm. College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)).

**1.     Prima Facie Case**

To establish a prima facie case of race discrimination, Vasquez must show that (1) he belongs to a protected class, (2) he was qualified for his job, (3) he was subjected to an adverse employment action, and (4) similarly situated employees not in his protected class

received more favorable treatment. *Moran v. Selig*, 447 F.3d 748, 753 (9th Cir. 2006) (citing *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002)).

PMB challenges only the fourth element, arguing that Vasquez has failed to demonstrate that he was replaced by someone outside of his protected class. The argument is unavailing in light of the above-stated facts. First, that Brian Perry, the purported fourth manager, did not complete his assistant managerial training and commence his employment as an assistant manager at the Indian School location until the day Vasquez was fired gives rise to an inference that Perry replaced Vasquez. PMB insists it had always intended to staff the Indian School location with four managers and that Vasquez's position was simply eliminated, but on summary judgment all inferences are drawn in favor of Vasquez, the nonmoving party. At the very least, there is a genuine issue of material fact as to whether Perry replaced Vasquez. Even if Vasquez's position was eliminated, it was Vasquez, not Perry, who was fired. As such, at least one similarly situated employee not of Mexican descent received more favorable treatment. The challenge therefore lacks merit.

### 2. **Nondiscriminatory Reason/Pretext**

Because PMB has not demonstrated that Vasquez failed to establish a prima facie case of discrimination, there is a presumption that PMB discriminated against Vasquez on the basis of race. The burden therefore shifts to PMB to articulate a legitimate, nondiscriminatory reason for terminating Vasquez's employment. PMB claims that it terminated Vasquez as part of a reduction in force because business had declined by 20-30%. It claims to have eliminated Vasquez's position because he was the only one struggling with his managerial responsibilities.

Because PMB's stated reason for terminating Vasquez's employment is legitimate and nondiscriminatory, the presumption of discrimination disappears and the burden shifts back to Vasquez to produce specific and substantial evidence that the stated reasons are pretextual. To overcome summary judgment on the issue of pretext, a plaintiff can produce direct evidence showing that "unlawful discrimination more likely motivated the employer" or indirect evidence showing that "the employer's proffered explanation is 'unworthy of

credence' because it is internally inconsistent or otherwise not believable." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000). These two approaches are not exclusive. *Id.* "[A] combination of the two kinds of evidence may in some cases serve to establish pretext . . ." *Id.*

Vasquez has produced sufficient evidence of pretext, both direct and indirect, to defeat summary judgment. First, there is indirect evidence indicating that (1) Brian Perry, the purported fourth manager, did not commence his employment as an assistant manager at the Indian School location until the day Vasquez was fired, and (2) the day Vasquez was fired, several employees approached him and cautioned him that Perry was going to replace him. One may infer from the aforementioned evidence that PMB never planned to staff the Indian School location with four managers and that it replaced Vasquez with Perry. Because replacing an employee is inconsistent with a purported reduction in force, the reason is not believable.

Though the above indirect evidence alone warrants denial of summary judgment, Vasquez's direct evidence of discrimination is worth mentioning because it bolsters a finding of pretext. The evidence show that Cortez, one of the three PMB employees who ultimately terminated Vasquez, frequently reminded the restaurant staff that he is not of Mexican descent and denied Vasquez access to the restaurant building and its safe, expressly stating, "I do not trust Mexicans." Both are indicative of some degree of racial animus. Cortez also reprimanded Vasquez for allegedly informing employees they could retrieve their paychecks on a Friday but expressly approved of the decision once he discovered that Debra Beal, a Caucasian, had made the decision.

Statements of direct bias have been found sufficient to defeat the employer's motion for summary judgment on pretext. In *Chuang* one of the promoting authorities disparagingly referred to Asian-Americans as "two Chinks." That was "an egregious and bigoted insult, one that constitutes strong evidence of discriminatory animus." The comment, by the same decision-maker about hiring a different Asian-American, was sufficient to establish a triable issue of fact concerning discriminatory intent. *Chuang*, 225 F.3d at 1128. Similarly, in

1 *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998), a manager stated to another manager in connection with not promoting the plaintiff that he "did not want to deal with another female." This was direct evidence of discrimination. In *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1150 (9th Cir. 1997), the decision-maker's reference to a Mexican-American employee as a "dumb Mexican" who "was hired because he was a minority" was sufficient evidence of pretext concerning the plaintiff, who was also Mexican-American. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1196 (9th Cir. 2003) (reversing summary judgment against a Lebanese-Muslim school teacher who was suspended for allegedly making a bomb threat where she presented evidence that the school district's interpretation of the event may have been influenced by stereotypes about her nationality or religion). Cumulatively, the above evidence is sufficient to preclude summary judgment, which is accordingly denied.

### C. ADEA

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1). The same burden-shifting framework applicable to Title VII claims applies to claims brought under the ADEA. *Wallis*, 26 F.3d at 889-90 (citing *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420 (9th Cir. 1990)).

#### 1. Prima Facie Case

To establish a prima facie case of age discrimination, Vasquez must prove that (1) he was over the age of 40, (2) he performed his job satisfactorily, (3) he was discharged, and (4) he was either replaced by a substantially younger employee with equal or inferior qualifications or, in the case of a reduction in force, circumstances give rise to an inference of age discrimination. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).

PMB challenges only the fourth element. As explained above, there is a genuine issue of material fact as to whether Perry replaced Vasquez. Furthermore, at the time of his discharge, Vasquez was approximately 60 years old and had several years of experience as

an assistant manager. Perry, on the other hand, was approximately 23 years old and had very recently completed his assistant managerial training. He was therefore substantially younger than Vasquez and arguably less experienced and less qualified than Vasquez. PMB's challenge to the fourth element of the prima facie case therefore fails.

### 2. Nondiscriminatory Reason/Pretext

The prima facie case, having been established, creates a presumption that PMB discriminated against Vasquez on the basis of age. The burden therefore shifts to PMB to articulate a legitimate, nondiscriminatory reason for terminating Vasquez's employment. PMB offers the same reason discussed in connection with Vasquez's Title VII claim. Because Vasquez's evidence suggests that reason is unworthy of credence, summary judgment is denied.

### D.  ADA

Pursuant to the ADA, an employer is prohibited from discriminating against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA claims are analyzed under the same burden-shifting framework applicable to Title VII claims. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 (2003).

### 1.  Prima Facie Case

To establish a prima facie case of discrimination under the ADA, Vasquez must demonstrate that (1) he is "disabled" within the meaning of the ADA, (2) he is a "qualified individual" within the meaning of the ADA, and (3) he suffered an adverse employment action because of his disability. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 988 (9th Cir. 2007); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). PMB maintains that Vasquez has failed to establish that he is "disabled" within the meaning of the ADA.

In 2008, prior to the enactment of the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, § 4(a), 122 Stat. 3553 (2008), the ADA defined the term "disability"

as a "physical or mental impairment that substantially limits one or more . . . major life activities," a "record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2) (1990).[3] Therefore, to establish a disability, Vasquez must generally prove three elements: (1) a physical or mental impairment (2) that substantially limits (3) a major life activity. 29 C.F.R. § 1630.2(h)-(j); *Sutton v. United Air Lines*, 527 U.S. 471, 479-80 (1999).

Vasquez claims that his cataracts rendered him "disabled" for purposes of the ADA. As an initial matter, seeing is a major life activity because major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Furthermore, his cataracts clearly qualify as a "physical impairment," which is defined as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more . . . body systems . . . ." 29 C.F.R. § 1630.2(h)(1). Therefore, the issue boils down to whether his cataracts substantially limited his eyesight.

A major life activity is substantially limited if an individual is "unable to perform" the activity or is "significantly restricted as to the condition, manner or duration" under which the individual can perform the activity compared to an average person in the general population. 29 C.F.R. § 1630.2(j). An impairment does not substantially limit a major life activity if it is "corrected by medication or other measures . . . ." *Sutton*, 527 U.S. at 482-83. Therefore, disabilities under the ADA must "be determined with reference to corrective measures . . . ." *Id.* at 488.[4]

---

[3] Although not raised in the parties' briefs, the ADA was amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, § 4(a), 122 Stat. 3553 (2008). The amendment was effective January 1, 2009. Because the alleged acts of discrimination occurred before January 1, 2009, and because the amendment does not apply retroactively, Vasquez's claim will be analyzed under the law in effect in 2008. *See Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009).

[4] The ADAAA, which, as explained *supra*, is inapplicable to this case, rejected *Sutton*'s requirement that the degree of limitation is to be determined with reference to

- 14 -

Vasquez admits that he received eye surgery that returned his vision to 20/20. His cataracts were therefore fully correctable. Even assuming the determination is to be made with respect to what corrective measures were available to Vasquez prior to and at the time of his termination, there is insufficient evidence that his cataracts rendered him unable to see or that they significantly restricted his eyesight. While there is evidence that he had some trouble seeing computer screens, there is no evidence that he was entirely prevented from using computers or that his computer use was significantly impeded. There is similarly no evidence that his vision was even slightly restricted with respect to other activities. Therefore, Vasquez was not "disabled" for purposes of the ADA at the time of his termination. PMB is accordingly entitled to summary judgment on this claim.

### E. Retaliation

To establish a prima facie case of retaliation, Vasquez must prove that (1) he engaged in an activity protected by Title VII, the ADA, or the ADEA, (2) PMB subjected him to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *Surrell v. Cal. Water Serv.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004). Once established, the burden shifts to PMB to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Surrell*, 518 F.3d at 1108. The burden then shifts back to Vasquez to demonstrate that the stated reason is a mere pretext for retaliation. *Id.*

Vasquez has failed to establish a prima facie case of retaliation because he has produced insufficient evidence that he engaged in protected activity. A plaintiff has engaged in activity protected by Title VII, the ADA, and the ADEA if he has "opposed" any unlawful employment practice or "has made a charge, testified, assisted, or participated in any manner" in an investigation, proceeding, or hearing under any of the respective statutes. 42 U.S.C. § 2000e-3(a) (Title VII); 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 12203(a) (ADA).

---

mitigating factors. *Rohr v. Salt River Project Agric. Improvement*, 555 F.3d 850, 861-62 (9th Cir. 2009).

A plaintiff need not prove that the employment practice "was in fact unlawful" under the respective statutes. *Trent v. Valley Elec. Ass'n*, 41 F.3d 524, 526 (9th Cir. 1994). He need only show that he reasonably believed the practice was prohibited. *Id.*

Here, Vasquez has produced evidence that he complained to "Misty" and Chad Kenyon, PMB's Regional District Manager, about his poor relationship with Cortez, but there is insufficient evidence that he complained about conduct that is in fact prohibited, or that Vasquez reasonably believed was prohibited, under Title VII, the ADA, or the ADEA.[5] That Cortez was generally "rude" to Vasquez and had denied him access to the store and the safe is no more than a run-of-the-mill workplace complaint wholly unrelated to discrimination, because Vasquez cannot recall whether he told Kenyon about Cortez's remark, "I do not trust Mexicans." The complaint about the cooler incident is similarly insufficient because Cortez's statement, "Juan is not shit in this place, you don't do anything that he says, and if you do that again, Juan and you will both be fired," cannot reasonably be deemed to be an unlawful employment practice and there is no evidence that Vasquez believed it was unlawful. Similarly, there is no evidence that Vasquez believed Cortez was engaging in an unlawful employment practice by laughing at his poor eyesight. Therefore, PMB is entitled to summary judgment on this claim.

### F. EPA

With some exceptions, the EPA prohibits employers from paying higher wages to employees of one sex than to employees of the opposite sex for equal work in jobs requiring "equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d)(1). Therefore, to establish a claim under the EPA, a plaintiff must prove that employees of the opposite sex were paid different wages for substantially equal work. *See Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1074 (9th Cir. 1999). Vasquez does not so much as allege that he was paid wages different from those of

---

[5] In his affidavit, Vasquez asserts that he mentioned "discrimination" to Kenyon, but at his deposition, Vasquez made no mention of the word "discrimination" and merely described what he could remember telling Kenyon about Cortez's conduct and remarks.

1 | his female counterparts. Therefore, summary judgment will be granted with respect to the
2 | EPA claim.

### G. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, Vasquez must prove that PMB (1) engaged in "extreme" and "outrageous" conduct, (2) intended to cause emotional distress or "recklessly disregarded the near certainty that such distress will result," and (3) actually caused him to suffer "severe emotional distress." *Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, 516, 115 P.3d 107, 110 (2005) (quoting *Ford v. Revlon*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987)).

To be extreme and outrageous, the acts complained of must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (Ct. App. 1995) (quoting *Cluff v. Farmers Ins. Exch.*, 10 Ariz. App. 560, 562, 460 P.2d 666, 668 (Ct. App. 1969)). Conduct in the employment context rarely rises to the required level of outrageousness. *Id.* (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). Furthermore, though a showing of physical injury or a disabling response is not required, the resulting emotional distress must be extreme and severe to support this cause of action. *Pankratz v. Willis*, 155 Ariz. 8, 17, 744 P.2d 1182, 1191 (Ct. App. 1987).

The Court cannot conclude, as a matter of law, that the facts support a claim for intentional infliction of emotional distress. First, none of Cortez's or PMB's conduct, which occurred entirely within the employment context, is sufficiently extreme and outrageous. Even Cortez's threat, which may reasonably be interpreted as a threat of termination if Vasquez did not report to work despite the recent birth of his daughter and her medical complications, is insufficient. *See Mintz*, 183 Ariz. at 554, 905 P.2d at 563 (concluding that an employer's forcing an employee to return to work against a doctor's recommendation does not meet the standard of outrageousness required to establish the claim). Second, there is no

1 showing of severe emotional distress. Therefore, summary judgment will be granted with respect to this claim.

### H. Negligent Infliction of Emotional Distress

"Negligent infliction of emotional distress requires that the plaintiff witness an injury to a closely related person, suffer mental anguish that manifests itself as a physical injury, and be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant." *Villareal v. State Dep't Of Transp.*, 160 Ariz. 474, 481, 774 P.2d 213, 220 (1989). The facts simply do not sustain the claim. Not only is there no evidence that any closely related third party was injured, there is also no evidence that Vasquez's mental anguish manifested itself as a physical injury or that Vasquez was sufficiently within any zone of danger as to be subjected to a unreasonable risk of bodily harm. Therefore, PMB is entitled to summary judgment on this claim.

IT IS THEREFORE ORDERED that Defendant PMB's Motion for Summary Judgment (Doc. 47) is granted with respect to Plaintiff's claims under 42 U.S.C. § 1983, the ADA, and the EPA, and with respect to his retaliation, intentional infliction of emotional distress, and negligent infliction of emotional distress claims. It is denied in all other respects.

DATED this 26th day of August, 2010.

_____
Neil V. Wake
United States District Judge